IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30644
Summary Calendar
_____


JEANETTE DODGE; JENNIFER DODGE,

Plaintiffs-Appellants,

versus

AMERICAN HONDA MOTOR COMPANY, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court for the
Western District of Louisiana
(CA-93-256)
_____

August 27, 1996
Before GARWOOD, HIGGINBOTHAM and STEWART, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Jeanette Dodge, individually and on behalf of her minor child, Jennifer Dodge, filed a products liability action in Louisiana state court naming American Honda Motor Company, Inc., Honda of North America, Inc., Honda Motor Company, Ltd., Big River Sales, Inc., d/b/a Big Red Honda, and the State of Louisiana——through the Department of Wildlife and Fisheries——as defendants.  In this action, plaintiffs-appellants (plaintiffs)

_____

[*]    Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

alleged that the four-wheel all-terrain vehicle (ATV) which Ricky Dodge was riding at the time of his fatal accident was "unreasonably dangerous" under the Louisiana Products Liability Act (LPLA), both in design and because the defendants failed to provide adequate warnings. Following removal to the district court below and the dismissal of the State of Louisiana and Honda North America, Inc., this action was tried before a jury, and a unanimous verdict was returned in favor of the defendants. On appeal, plaintiffs contend that the defendants entered into a stipulation during a sidebar conference at trial in which the defendants admitted that the 1986 Honda TRX350 ATV ridden by decedent was "unreasonably dangerous" under the LPLA. Therefore, plaintiffs argue that the district court erred when it denied plaintiffs' motion for judgment as a matter of law with respect to plaintiffs' claim under the LPLA that the design of the TRX350 was "unreasonably dangerous." We affirm the judgment of the district court.

## Facts and Proceedings Below

On the evening of January 20, 1992, Ricky Dodge was crossing a drainage ditch with steep embankments when the 1986 Honda TRX350 ATV he was riding flipped over backwards and struck him. Dodge sustained extensive head injuries as a result of this accident, and he died sometime during the night of January 20th. His body was not found until the following day.

2

At the time of this accident, Dodge, an enforcement officer for the Louisiana Department of Wildlife and Fisheries, was investigating a report of illegal deer hunting activity. The ATV in question was Dodge's property, and he was operating it without his headlight illuminated and without a helmet. Dodge had owned and operated the ATV for six years prior to his accident, during which time he had frequently used the ATV within the scope of his employment as an enforcement officer.

On January 1, 1993, Jeanette Dodge, individually and on behalf of her minor child, Jennifer Dodge, filed this products liability action in the 12th Judicial Court, Parish of Avoyelles, in Louisiana alleging that Dodge's 1986 Honda TRX350 (TRX350) was "unreasonably dangerous" under the Louisiana Products Liability Act (LPLA), both in design and because of inadequate warning.[1] Plaintiffs named as defendants American Honda Motor Company, Inc., Honda of North America, Inc., Honda Motor Company, Ltd., Big River Sales, Inc., d/b/a Big Red Honda and the State of Louisiana, through the Department of Wildlife and Fisheries.[2]

---

[1] These two theories of liability are codified in the LPLA, La.Rev.Stat.Ann. §§ 9:2800.56, 9:2800.57. However, as the plaintiffs have abandoned on appeal (by presenting no argument as to any claim of error respecting) their claim that the TRX350 was "unreasonably dangerous" because of inadequate warning, we will limit our review to the plaintiffs' claim that the ATV was "unreasonably dangerous" in design, pursuant to section 9:2800.56.

[2] After removal to the district court below, the State of Louisiana, through the Department of Wildlife and Fisheries, was dismissed as a defendant (shortly thereafter, the State of Louisiana, through the Office of Risk Management, Division of

The case was tried before a jury in April of 1995. During trial, a sidebar discussion occurred in which counsel for the defendants stipulated to certain facts in the presence of opposing counsel and the judge. Citing this stipulation, plaintiffs moved for judgment as a matter of law with respect to their allegation that the TRX350 was "unreasonably dangerous" under the LPLA. The district court denied this motion, and the jury rendered a unanimous verdict in favor of the defendants.

Plaintiffs appeal, seeking reversal of the district court's judgment and a new trial. Moreover, plaintiffs ask this Court to order the trial court on remand to enter judgment that the TRX3350 was "unreasonably dangerous" in design, leaving only the questions of causation and damages for the jury on retrial.

**Discussion**

In considering whether there was sufficient evidence to submit a case to the jury in the face of a motion brought pursuant to Rule 50(a), we view all of the evidence in the light and with all reasonable inferences most favorable to the non-movant. *See Turner v. Purina Mills*, *Inc.* 989 F.2d 1419, 1421 (5th Cir. 1993) (citing *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969)). "A directed verdict is proper only if the evidence points 'so strongly

Administration, Office of the Governor, intervened in the lawsuit); additionally, Honda North America, Inc. was dismissed as a defendant; no complaint is made on appeal respecting these dismissals.

4

and overwhelmingly in favor of one party' that a reasonable trier of fact could not arrive at a contrary verdict."  *Id.*

In the present case, it is the plaintiffs' contention that the defendants effectively stipulated at trial that the TRX350 which Ricky Dodge was riding at the time of his fatal accident was "unreasonably dangerous" under the LPLA; accordingly, plaintiffs maintain that the district court should have granted their motion for judgment as a matter of law with respect to this issue, leaving for the jury's consideration only the issues of causation and damages.  We hold that the record does not support the plaintiffs' contention.

In order to prevail on their claim that the TRX350 was "unreasonably dangerous" in design, plaintiffs must have demonstrated that:

> "[A]t the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.  An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product." La.Rev.Stat.Ann. § 9:2800.56.

Plaintiffs contend that, during a sidebar discussion involving

5

counsel and the trial judge, counsel for the defendants stipulated to certain facts: (1) the defendants admitted that plaintiffs had identified a feasible, safer alternative design "capable of preventing Ricky Dodge's death";[3] and (2) the defendants agreed that this alternative design "would not have cost a nickel to adopt." We note that, even if we assume *arguendo* that the plaintiffs' characterization of the alleged stipulations is accurate, this characterization omits any reference to the necessary elements of section 9:2800.56 addressing "the likelihood that the product's design would cause the claimant's damage" and "the adverse effect, if any, of such alternative design on the utility of the product."[4] Therefore, in light of the evidence presented at trial, even if we were to embrace the plaintiffs' above characterization of the sidebar discussion, we could not conclude that plaintiffs were entitled to a directed verdict that the TRX350's design was "unreasonably dangerous" under section

---

[3] In their reply brief to this Court, plaintiffs extend their reading of this stipulation, asserting that the defendants admitted that plaintiffs had identified "not just one but several alternative designs."

[4] We further note that evidence was adduced at trial by the defendants regarding both of these elements of section 9:2800.56. First, the defendants' expert witness, Dr. Graeme Fowler, utilized a video tape to demonstrate to the jury that the ditch where Ricky Dodge's accident occurred could be safely negotiated on a TRX350. Second, Fowler testified that the alternative design advanced by the plaintiffs was not a four-wheel drive design, and even if it were, its capabilities would be less than those of the TRX350; Fowler generally testified that utility of the TRX350 would be compromised if the plaintiffs' alternative design were implemented.

6

9:2800.56.

Furthermore, we find no support for these characterizations by the plaintiffs of the stipulations entered into by counsel for the defendants. The sidebar discussion in question consisted of the following exchange, occurring during the direct examination of the plaintiffs' expert witness, Dr. David Renfroe[5]:

"Q: All right. Now, do you know whether in fact there are all-terrain vehicles sold which have a label which specifically do just that and say don't go up over hills that exceed twenty-five degrees?

A: Yes, there are some that have that, yes.

Q: In fact, is it not the American manufacturer of ATV's, the Polaris,——

A: It is.

Q: ——that gives just that instruction?

A: It is, it does.

Mr. Koch [plaintiffs' counsel]: One second. Judge, there is an objection to the next item I would like to show the witness.

The Court: Okay.

[Counsel both approached the bench at this point.]

The Court: Wait a minute, he is going to make his objection.

Mr. Koch: Okay, go ahead.

---

[5] This sidebar discussion transpired when plaintiffs' counsel attempted to introduce into evidence an exhibit which demonstrated a particular warning sign affixed to the American-made Polaris ATV. Anticipating defense counsel's objection to this exhibit in light of the court's pre-trial consideration of this evidence, plaintiffs' counsel asked to approach the bench.

Mr. Duplass [defense counsel]:     This was sustained, you did this on the telephone conference, the Polaris 1, this is a different vehicle, a different warning——

Mr. Koch:     Wait a minute, let me address that. Number one, there was no motion in limine about this, Judge; number two, what we are talking about is the area of feasibility, Judge.  This is another four-wheel all-terrain vehicle that is made by a different manufacturer, they have a specific one point that talks about never operate the ATV upper limits, that is grades twenty-five degrees.  Now, for that reason, this is important, if nothing else, even if this witness doesn't comment on it I ought to be allowed to authenticate it through this witness because remember we don't have warning experts in this case, so I'm not——I can't do it through anybody, you have to have somebody to authenticate it.

The Court:     But the feasibility for doing this has never been contested.

Mr. Koch:     If they will stipulate that this is a feasible——that it would be feasible, as that term is defined in the Products Liability Act to do this, then I don't have problems.

The Court:     They can always put a less vital or vibrant engine, if you will, and they can always put in different instructions, and that has never been suggested as a defense.

Mr. Koch:     All right, Judge, I just want to make sure that we are clear on that because as I, in reading the LPLA, it is my burden to show that there is an alternative, okay, and I have identified something and this is——limiting use is an alternative and that the burden of that alternative, the burden of adopting that alternative is outweighed by the benefit of adopting that alternative.

The Court:     You have already pointed it out, it wasn't going to cost anything.

Mr. Koch:     Okay.  Well, then my point is——

The Court:     So that is a given.

Mr. Koch:     If Honda is not contesting that, then I'm ——

8

The Court:     Have you contested that?

Mr. Duplass:   No, Judge, we haven't.

Mr. Koch:      No, not contesting it in this case, Judge, let me make sure—

The Court:     There is nothing to dispute.

Mr. Koch:      Okay, fine.

[At this point, proceedings resumed before the jury.]"

In sum, then, it appears that counsel for the defendants entered into the following stipulation as a result of this sidebar exchange: "limiting use is an alternative and that the burden of that alternative, the burden of adopting that alternative is outweighed by the benefit of adopting that alternative."  It is less clear what the parties and the court understood the phrase "limiting use" to encompass; however, even if we interpret that phrase broadly, in context it could refer to no more than the feasible alternatives of limiting the use of the TRX350 by affixing additional warnings or installing a "less vital or vibrant engine."

Furthermore, it is unclear what meaning the parties *agreed* to assign the phrase, "the benefit of adopting that alternative." Even though plaintiffs' counsel refers to the LPLA in connection with this phrase, it is a huge stretch to read into the defendants' implicit acknowledgment of this phrase a stipulation that the LPLA's requirement in section 9:2800.56(1)——that "the product [] was capable of preventing the claimant's damage"——was established

9

in the instant case. As we noted in *Rice v. Glad Hands, Inc.,* 750 F.2d 434 (5th Cir. 1985), "A stipulation binds parties only to the terms *actually* agreed upon." *Id.* at 438 (emphasis added).

Moreover, even if we consider the court's observation, which we impute in general terms to the defendants, that the plaintiffs' proposed alternative design "wasn't going to cost anything" to adopt, there is no support for the suggestion that this stipulation was intended to satisfy——in the context of section 9:2800.56(2)——the requirement that "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweigh[] the burden on the manufacturer of adopting such alternative design." It is neither clear nor even likely that the district court was advocating——and the defendants implicitly acknowledging——that there would literally be *no* cost associated with implementation of the plaintiffs' proposed design change; and, if "the likelihood that the [TRX350's] design would cause [Ricky Dodge's accident]" were found to be sufficiently low, then this portion of section 9:2800.56(2) would not be satisfied in the present case.[6] Therefore, interpreting this sidebar discussion

---

[6] While it is undiscernible what "benefit of adopting [the plaintiffs' proposed] alternative [design]" the plaintiff was referring to in this sidebar discussion, there is simply no support for reading into the defendants' failure to contest this ambiguous reference a stipulation that one or both of the above requirements of section 9:2800.56 was satisfied. In fact, a more tenable reading of this final exchange at sidebar is that the defendants conceded only that the plaintiffs' proposed alternative design "wasn't going to cost anything", and we are reluctant to impute

10

even in the light and with all reasonable inferences most favorable to the plaintiffs, it appears that the defendants' stipulation stemming from this discussion amounted to an agreement that there existed a feasible alternative design for the TRX350, and that the cost of implementing this design change would be nominal.

The parties revisited the substance of this stipulation on several occasions during trial, but there is nothing which would compel our departure from the above analysis of the stipulation. For instance, when counsel for the defendants was cross-examining Dr. Renfroe regarding "alternate feasible designs", plaintiffs' counsel objected and the following exchange (again, at sidebar) ensued:

> "The Court:    We talked yesterday about making the motor less vital, or vibrant I guess, and using instructions that would clearly indicate that if you knew the grade it should be x rather than y.  Now, he said those two things yesterday.  He can ask him about the two things he said yesterday.
>
> Mr. Koch:    Oh, I understand, I'm not complaining about that.
>
> The Court:    And if he didn't have any alternate in his deposition he can ask him that——
>
> Mr. Duplass:    He did not, Judge.
>
> Mr. Koch:    My only point I was trying to make is that we got into a discussion issue about alternative designs and things, and Mr. Duplass' statement was that they are not contesting that in this case——

even this statement to the defendants as it is unclear whether the defendants agreed to be bound by a literal construction of the term ——used by the court——"anything."

11

Mr. Duplass: *We are not contesting feasibility*, but he denied——" (emphasis added).

Plaintiffs correctly observe that this exchange reenforces their argument that a stipulation was entered into by the defendants concerning the feasibility of alternative designs. However, plaintiffs also cite this exchange in support of their broader assertion that this stipulation constituted an admission on the defendants' part that:

> "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product."

There is no support for this broader assertion.

Similarly, plaintiffs direct this Court's attention to another discussion concerning the defendants' stipulation:

> "Q: Okay. And if you decrease the torque, if you lessen the torque on a vehicle and lessen the available torque, it will significantly adversely affect the useability of the vehicle, does it not?
>
> Mr. Koch: Judge, sorry, I apologize, but I really have to approach again.
>
> The Court: I'm getting a little tired of approaching, this man is under cross examination.
>
> Mr. Koch: Very well. I apologize for interrupting.
>
> A: Where were we? I'm sorry.
>
> Q: The question was simple,——
>
> Mr. Koch: Judge, the objection is that Mr. Duplass has agreed where feasibility is not an issue.

12

The Court: *Feasibility is not at issue* here *because* he has said already that *you could build a machine with less motor*, you could build a machine with no motor for that matter, and *you could give instructions that would limit its use to very placid surroundings, like* he referred to, *a golf course* or I think he said a back yard or something along that line. So it's not a question——

Mr. Duplass: It's not feasibility, Your Honor, that's right. It's a simple question, what happens if you decrease the torque and *the utility*——you know, weighing the utility versus what you do does, I asked him specifically that question.

Mr. Koch: And, Judge, that's specifically what we addressed yesterday, that that was not an issue in this case. I specifically talked about this benefit versus torque thing and I'm told it's not at issue, and now Mr. Duplass wants to start asking questions about it and I object.

The Court: I think we can leave that aside because it's not an issue.

Mr. Koch: Thank you.

Mr. Duplass: If it's not an issue, that's fine, Judge." (Emphasis added).

It is difficult to identify precisely what the district court is characterizing as "not an issue" here.[7] The court was apparently referring to "this benefit versus torque thing" championed by plaintiffs' counsel, and plaintiffs' counsel was in turn responding to opposing counsel's characterization that, "It's a simple question, what happens if you decrease the torque and the utility——you know, weighing the utility versus what you do does." And, while we are again left with no express guidance as to what

---

[7] Presumably, the district court's finding of a non-issue in this context stems from the defendants' stipulation.

13

"benefit" the plaintiffs were contemplating, the testimony surrounding this sidebar discussion suggests that the plaintiffs were advocating a rough equation, based on the LPLA, in which increased (available) torque is necessarily associated with an increased potential for harm and decreased (available) torque is correspondingly associated with less potential for harm. However, considering the court's repeated association of "less motor" (or "no motor") with the issue of feasibility──specifically, the feasibility of installing a smaller motor in the TRX350──it seems likely that the court was referring to the issue of feasibility when it stated that "it's not an issue", and that the defendants took the same view when they acquiesced in this finding. At most, then, we view the defendants' acquiescence as an agreement that the stipulation established the feasibility of an alternative design for the TRX350 in which a smaller engine was utilized, and perhaps also a general acknowledgment that some measure of "safety" benefit *could* accompany such a design change.

Nevertheless, these sidebar skirmishes regarding the defendants' stipulation fail to demonstrate that the defendants stipulated to all of the requirements of section 9:2800:56. In view of defendants' contention, and evidence, that Ricky Dodge could have safely negotiated the fateful ditch on his TRX350, we cannot conclude that the defendants' implicit acknowledgment of some "safety" benefit from a smaller engine constitutes a

14

stipulation that this alternative design "was capable of preventing the claimant's damage"; according to defendants, the "claimant's damage" in this case resulted from human error. There is simply no support for a reading of the defendants' stipulation to include a concession that Ricky Dodge's accident resulted from the availability of excessive torque. Moreover, even under this expansive reading of the defendants' stipulation, we find that the defendants never reached any agreement regarding "[t]he likelihood that the [TRX350's] design would cause the claimant's damage." Finally, it is likewise clear that nothing in the defendants' stipulation touched on "the adverse effect, if any, of such alternative design on the utility of the product," a hotly contested issue at trial. Therefore, we hold that the district court did not err in finding that the defendants never entered into a stipulation that the TRX350 was "unreasonably dangerous" in design, pursuant to section 9:2800:56, and that, accordingly, the district court did not err in denying the plaintiffs' motion for judgment as a matter of law with respect to their allegation that the TRX350 had an "unreasonably dangerous" design under the LPLA. *See United States v. McKinney*, 758 F.2d 1036, 1048 (5th Cir. 1985) (we review for clear error a district court's finding that there was no agreement to enter into a particular stipulation).

Finally, we note that there is no merit to the plaintiffs' present contention that they relied on this expansive view of the

stipulation and therefore failed to adduce certain evidence at trial, and that the district court's denial of their motion for judgment as a matter of law accordingly permitted the jury to decide the issue concerning the allegedly "unreasonably dangerous" design without the benefit of plaintiffs' "full proof." Our review of the record demonstrates that, subsequent to the sidebar discussion giving rise to the stipulation, plaintiffs questioned their own expert witness extensively on subjects relevant to section 9:2800.56, including (1) the impact of an alternative design on (reducing) the likelihood of Ricky Dodge's accident, and (2) the weighing of the potential "benefit" inherent in the alternative design versus the burden of adopting that design. Additionally, plaintiffs questioned the defendants' expert witnesses concerning the comparative utility of the TRX350 and the plaintiffs' proposed "alternative design."

In support of this contention, plaintiffs identify no specific evidence which they abstained from presenting based on their reliance on the stipulation, and specify only one instance in which they were allegedly prevented from adducing evidence based on the defendants' stipulation. With regard to the latter instance, plaintiffs maintain that counsel for the defendants raised an objection——grounded on the defendants' own stipulation——in response to the plaintiffs' questioning of a witness regarding the feasibility and relative utility of a four-wheel drive ATV which had lower torque than the TRX350. However, the testimony and

16

objection in question provide no support for this contention by the plaintiffs:

> "Q:   All right.   Now, in 1986, sir, the TRX350 was the largest engine size sold by American Honda; is that accurate?
>
> A:    Yes.
>
> Q:    And subsequent to that time American Honda has marketed four-wheel drive 300 c.c. engines, hasn't it?
>
> A:    They have.
>
> Mr. Williams:   Objection, Your Honor, it is subsequent to that time, you limited us to——
>
> Mr. Koch:        I think I have been pretty——
>
> The Court:       I think you could try a little harder.
>
> Mr. Koch:        I'm almost done.
>
> The Court:       I mean I'm going to sustain the objection.
>
> Mr. Koch:        That's fine, Judge.   One moment and I may actually be able to stop.
>
> The Court:       Good."

While it is not clear from this discussion what (time) "limitation" the parties and the court were referring to, it *is* evident that nowhere in the defendants' stipulation concerning the feasibility and cost of an alternative design to the TRX350 did the defendants' agree to restrict their evidence to a limited time frame.  Besides, the objection above apparently refers to a limitation applied by the court against both the defendants and the plaintiffs. Therefore, the limitation at issue in the above exchange was distinct from the defendants' stipulation concerning the

17

feasibility and cost of an alternative ATV design. In sum, the plaintiffs were mistaken in their belief that the defendants had stipulated to the TRX350's "unreasonably dangerous" design under the LPLA, but even so, this mistaken belief did not prevent the plaintiffs from presenting their "full proof" on this issue.

## Conclusion

The judgment of the district court is accordingly

AFFIRMED.

18